UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ADT LLC, and ADT US HOLDINGS, INC.,

    Plaintiffs,

        v.                                  **JURY TRIAL DEMANDED**

NORTHSTAR ALARM SERVICES LLC,
and VISION SECURITY, LLC,

    Defendants.
_____/

## COMPLAINT

Plaintiffs ADT US HOLDINGS, INC., and ADT LLC (together, "ADT"), through undersigned counsel, bring this action for damages and injunctive relief and in support allege:

## SUMMARY OF THE CASE

1. This is an action for damages, attorney fees and equitable relief arising from NorthStar's deceptive sales practices and for breach of Vision's settlement agreement in *ADT LLC v. Vision Security*, No. 9:13-cv-81197 (S.D. Fla.) ("*Vision*"). NorthStar competes with ADT, selling residential alarm systems door-to-door to ADT's customers. NorthStar's sales agents use false sales pitches that mislead ADT's customers into believing that the agents represent ADT, or that they are otherwise affiliated with ADT, and that they are visiting to install new ADT alarm equipment when in fact they have no ADT affiliation. This deception confuses ADT's customers at their doorsteps, winning their interest and trust in a calculated effort to gain access to the customers' homes and install new NorthStar equipment in the guise of an "upgrade." Once inside, the agents sign ADT's customers to new contracts with NorthStar. These practices violate Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and ADT's common-law rights against unfair competition. ADT seeks (1) an injunction barring

NorthStar's further use of deceptive sales tactics; (2) compensatory and punitive damages caused by NorthStar's deceptive sales practices, the recovery of NorthStar's profits, and ADT's costs and attorney fees incurred in this lawsuit; (3) a declaration that NorthStar was aware of the Vision injunction when it consummated its *de facto* merger with Vision in January 2015; and (4) recovery from both defendants of unpaid settlement proceeds owed to ADT in the *Vision* settlement, [*Vision* DE 75-1] for which NorthStar is liable as a result of the *de facto* merger.

2.  The Court has already considered many of the arguments and witnesses on which this action proceeds. Originally, ADT sued Security Networks and Vision Security in 2012 for similar deceptive sales practices, *see ADT LLC v. Security Networks, LLC*, No. 9:12-cv-81120 (S.D. Fla.) ("*Security Networks*," or "*SN*"). Defendants there agreed to settle that case for a payment of $2.2 million [*SN* DE 104-2] and entry of a permanent injunction forbidding a comprehensive list of proscribed deceptive sales tactics. [*SN* DE 105.] ADT again sued Vision in 2013 in the *Vision* suit, No. 9:13-cv-81197, after learning that Vision was continuing to train its sales agents to use the proscribed sales practices. ADT and Vision settled this second case in November 2014 for, *inter alia*, payments totaling $350,000 and entry of an expanded permanent injunction [*Vision* DE 75-1] under the *Security Networks* caption. [*SN* DE 107-1.]

3.  Finally, in 2015 ADT applied in *Security Networks* for an order to show cause why NorthStar should not be held in contempt of the expanded injunction [*SN* DE 107-1] following NorthStar's January 2015 *de facto* merger with Vision, and NorthStar's continuation of the sales frauds proscribed by the Vision injunction. Following an evidentiary hearing, the Court found that NorthStar was Vision's successor by *de facto* merger, and that NorthStar was bound by the injunction. [*SN* DE 146; *SN* DE 153.] On appeal of that order, the Eleventh Circuit vacated it because the record did not show that NorthStar had prior knowledge of the

injunction. *ADT LLC v. NorthStar Alarm Services, LLC*, 853 F.3d 1348 (11th Cir. 2017). The Eleventh Circuit did not find that the Court's finding of *de facto* merger was in error, nor did the Eleventh Circuit reach the merits of ADT's claims against NorthStar.

4. Now, ADT seeks legal and equitable relief directly against NorthStar for NorthStar's fraudulent sales practices – not just for the torts occurring after NorthStar's merger with Vision, but also for those that NorthStar committed independently before the merger. In all, ADT is aware of at least 440 complaints by ADT customers regarding NorthStar's frauds on consumers since March 2014, including 120 occurring before the Vision merger. In addition, ADT seeks recovery of the unpaid portions of its *Vision* settlement from Vision as well as from NorthStar as Vision's successor by merger.

## PARTIES

5. Plaintiff ADT US Holdings, Inc., is a Delaware corporation with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. ADT US Holdings is a holding company that owns, *inter alia*, all ADT trademarks, including without limitation 21 ADT live word trademarks featuring the letters "A – D – T," registered in the United States Patent & Trademark Office that bear the registration numbers 3251836, 3352491, 710708, 710507, 3515266, 3511263, 3445423, 3909665, 3485321, 3421797, 1034716, 838956, 803247, 846966, 3348663, 3253804, 3445420, 3991449, 3335239, 3335298, and 3427081 ("ADT Trademarks"). ADT US Holdings is ultimately wholly owned by ADT Inc., a publicly-traded company with shares listed on the New York Stock Exchange [NYSE: ADT].

6. Plaintiff ADT LLC is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. ADT LLC operates the

3

ADT alarm services business in the United States. ADT LLC uses the ADT Trademarks under license from ADT US Holdings. ADT LLC is owned by ADT US Holdings, Inc.

7. Defendant NorthStar Alarm Services, LLC, Inc., is a limited liability company organized under the laws of the State of Utah, with its principal place of business located at 545 E University Parkway, Suite 500, Orem, Utah 84097. NorthStar is registered to do business in Florida, and its Florida agent for service of process is Pacific Registered Agents, Inc., 5647 110th Avenue North, Royal Palm Beach, Florida 33411.

8. Defendant Vision Security, LLC, is a limited liability company organized under the laws of the State of Utah. Prior to its January 2015 *de facto* merger with NorthStar, Vision had its principal place of business at with its principal place of business at 508 W 800 N, Orem, Utah 84057. Vision registered with the Florida Department of State to transact business in Florida in December 2007, and was registered to do business in Florida continuously until the 2015 merger. Following the merger, Vision relocated its offices to 1082 W 700 S, Suite B, Pleasant Grove, Utah 84062. Vision's Florida registry has expired. Utah records show that Vision's Utah registry expired on June 28, 2017. Vision's last known registered agent for service of process is its sole member, Robert Harris, located at the company's Pleasant Grove address.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to section 1331 of title 28 because it presents a Federal question under Section 43 of the Lanham Act.

10. This Court has supplemental jurisdiction over the state-law claims also asserted in this action pursuant to section 1367(a) of title 28.

11. Venue lies in this District pursuant to section 1391(b) of title 28 because defendants are found in this District, and because a substantial number of the events giving rise to the claims asserted in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12. ADT, founded in 1874, is the oldest, largest and best-known provider of electronic security services and equipment for homes and businesses in the United States.

13. ADT provides security services and equipment nationwide and is engaged in interstate commerce for the purposes of the Lanham Act.

14. ADT's name and trademarks are registered with the United States Patent and Trademark Office.

15. As a Florida resident, ADT is injured in Florida by NorthStar's tortious activities.

16. NorthStar has been registered to do business in Florida continuously since 2008 with the Florida Department of State, Division of Corporations.

17. NorthStar has actively marketed, sold and installed alarm systems to Florida consumers since 2008.  NorthStar has solicited Florida residents door-to-door in Florida communities.  NorthStar has advertised its alarm services specifically to Floridians through its website.  NorthStar holds Florida license No. EG13000408 to sell alarm services to Floridians. NorthStar has registered a qualified agent to sell alarm systems in Florida.

18. A substantial fraction of the violations that form the basis of this complaint occurred in Florida.  At all times relevant to this Complaint, NorthStar misled Florida consumers and engaged in the deceptive sales practices that are the subject of this civil action.

19. NorthStar and ADT are direct competitors in the security systems markets.  ADT and NorthStar market and sell substantially similar goods made by the same suppliers through

the same channels to the same target markets of residential consumers. The companies also provide substantially similar security monitoring services to their respective customers. ADT operates in each of the states in which NorthStar sells and installs alarm systems.

20. NorthStar's sales agents target ADT customers in various ways, often by seeking houses with the distinctive ADT sign that ADT's customers post on their lawns to deter burglars and trespassers.

21. The complaints received by ADT show that NorthStar's sales agents target retirees and older customers. In ADT's contempt proceeding against NorthStar, the Court heard testimony by *de bene esse* deposition of 19 ADT customers who each recounted the deceptive sales pitches made by NorthStar sales agents. Based on this testimony, the Court agreed that "the NorthStar sales reps preyed upon elderly and confused customers." [*SN* DE 250 at 10.]

22. NorthStar's sales agents solicit ADT's customers in unannounced "cold" door-to-door sales visits to the customers' homes. At the beginning of these visits, the agents use deceptive sales pitches that are intended to mislead (and that do mislead) ADT's customers into believing that NorthStar represents ADT, or that NorthStar is affiliated with ADT, or that they are visiting at ADT's direction, or that they work for the companies that made the ADT alarm equipment installed in the ADT customers' homes.

23. NorthStar's agents use these pitches to induce ADT customers to believe that they have an existing business relationship with the agents, to trust them, and to grant the agents entry into their homes. Once inside, having won the customers' trust by these frauds, the agents lead the customers to sign NorthStar contracts and install NorthStar alarm systems in the mistaken belief that they are receiving new ADT equipment from ADT, an ADT affiliate, or an ADT successor.

24. This Court, after reviewing the testimony of nineteen ADT customer witnesses in the contempt proceeding, found that sixteen of them had offered clear and convincing testimony that, taken together, led to the inference that NorthStar had engaged in "an organized, widespread violation of the injunction," [*SN* DE 284 at 48] and by extension the Lanham Act, amounting to a "scheme" to mislead ADT's customers, [*SN* DE 284 at 51] not mere "random, isolated instances" by some rogue NorthStar sales agents. [*SN* DE 284 at 53.]

25. NorthStar's deceptive practices injured ADT by causing ADT's customers to listen to its agents' deceptive sales pitches, and, ultimately, to uninstall their ADT alarm systems, replace them with NorthStar's equipment, terminate the customers' ADT contracts, and have the customers execute new contracts for security services with NorthStar.

26. NorthStar, by falsely representing to ADT customers that their ADT alarm systems are outdated and vulnerable to burglars, or are in need of "upgrades," and by impersonating ADT in their false sales pitches, damaged ADT's goodwill and reputation as a safe and reliable provider of security services.

27. NorthStar's sales agents misappropriated ADT's trademark and used it in their sales pitches to establish the false appearance of an affiliation with ADT. By using ADT's mark without license to obtain a business advantage with ADT's customers, NorthStar unjustly enriched itself at ADT's expense.

28. This unjust enrichment deprives ADT of income that ADT dealers ordinarily pay ADT as a part of their dealership agreements to use the ADT name. ADT is entitled to recover the lost royalties that NorthStar should have paid to ADT for the use of ADT's trademark as part of its efforts to market NorthStar alarms to ADT customers.

29. ADT devotes substantial assets to the advancement and protection of its goodwill and reputation. ADT's advertising budget alone for 2013 to 2017 was $158 million, $167 million, $191 million, $152 million, and $129 million, respectively.

30. NorthStar's false sales pitches injure ADT's goodwill and reputation. Some customers are left with the false belief that ADT is out of business, that ADT has been acquired, their ADT alarm systems are outdated and vulnerable to burglars. Others mistakenly assume that NorthStar had access to the private data the customers had entrusted to ADT, leaving them to question ADT's ability to safeguard their interests. Yet others understand the false pitch for what it is, but reconsider their ADT service because ADT is a target of scammers. In many ways the NorthStar agents' false sales pitches damage ADT's goodwill and reputation as a reliable provider of security services.

31. As a result of NorthStar's deceptive practices, a number of ADT customers have confused NorthStar's sales agents with ADT representatives, and as a result have unwittingly found themselves with NorthStar's alarm systems installed in their homes, and with contractual obligations to both NorthStar and ADT. In some instances, ADT has been required to send technicians to the deceived customers' houses to reinstall the removed ADT equipment at considerable expense to ADT. In others, the customers retained NorthStar's systems and terminated their ADT contracts.

32. Such practices violate statutory and common-law prohibitions against the use of false and deceptive statements in commerce. They also violate the security systems industry's own Code of Ethics and Standards of Conduct, which requires that companies "truthfully and clearly identify themselves by name … at the initiation of a sales presentation, without request from the consumer," and which prohibits as common deceptive sales practices, *inter alia*, (a) any

8

claim that a competitor is going out of business, (b) any claim that the company is taking over the competitor's accounts, or (c) any offer of an "update" or "upgrade" of an existing system that requires the execution of a contract with a new security services provider.

33. NorthStar's agents have been defrauding ADT customers with abandon since at least 2013. During the 2014 sales season, over 120 ADT customers reported NorthStar deceptive sales pitches to ADT. Following the Vision merger in January 2015, ADT has received three hundred more such reports from customers.

34. The experiences of the nineteen customers who testified in the *Security Networks* contempt proceeding are representative of the hundreds of other reports that ADT has received from its customers, as are the accounts stated in the dozens of customer declarations that ADT offered in support of its contempt application. [*SN* DE 108-40 through 108-50; *id*. 119-1 through 119-7; *id*. 126-1 through 126-9.] ADT incorporates these customers' accounts here by reference, as if set forth fully in the text of this Complaint.

35. These reports are but the tip of the iceberg. It is an accepted (and obvious) tenet of consumer complaint behavior, that for every aggrieved customer who reports a deceptive sales practice, many more go uncounted. The hundreds of complaints that ADT has received about NothStar over the past four years are likely indicative of tens of thousands of other occurrences.

36. As the reports illustrate, NorthStar's sales agents have tailored their sales pitches to confuse ADT's customers on their doorsteps. NorthStar's agents make false representations of affiliation with ADT to win the customers' interest and trust.

37. ADT's customers allow NorthStar's agents into their homes in the mistaken belief that they are speaking with a person affiliated somehow with ADT, visiting to provide the customers with goods and services that are related to their existing ADT alarm system. ADT's

customers repeatedly confirm that but for this initial confusion, they would never have allowed NorthStar's sales agents into their homes.

38.     This confusion at the outset of a sale harms ADT by allowing NorthStar to freeride on ADT's goodwill with its customers to gain their attention and trust.  NorthStar's later efforts to clarify their lack of ADT affiliation do not cure the confusion that has already occurred at the outset of the transaction, even in those instances where a customer understands by the point of sale that she is contracting with NorthStar.  But in most instances the customer signs a contract with NorthStar in the mistaken belief that she is signing only a work authorization for the installation of ADT equipment by ADT or its affiliate.

## COUNT I
### (Against NorthStar)
### UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A)

39.     Plaintiffs incorporate Paragraphs 1 through 38, as if set forth fully here.

40.     ADT US Holdings owns the ADT Trademarks.  ADT LLC uses the ADT Trademarks under license from ADT US Holdings.  Both are injured by NorthStar's likely confusion of ADT's customers as to the affiliations of NorthStar's sales agents with ADT.

41.     NorthStar's sales agents use false representations of affiliation with ADT to confuse ADT's customers as to the agents' true affiliation, to interest the customers in their pitches, to win the customers' trust, and to gain access to their homes.

42.     In fact, the NorthStar sales agents do not represent ADT, nor is NorthStar itself affiliated in any manner with ADT.

43.      NorthStar's sales agents make these false representations to ADT's customers with the intent of deceiving ADT's customers as to a relationship or affiliation with ADT that does not exist, and that has never existed.

44. These false and misleading statements are likely to confuse consumers regarding NorthStar's apparent (but false) affiliation with ADT in the initial stages of a sale. In fact, as documented in the customer declarations and deposition transcripts referenced in Paragraph 34 above, they already have created actual confusion among consumers, and will continue to do so if permitted to continue.

45. Some ADT customers, initially confused at their doorsteps, eventually realize by the point of sale that the sales agents represent NorthStar, not ADT. But many do not, remain confused at the point of sale, and sign contracts with NorthStar in the mistaken belief that they are contracting with ADT, or with one of ADT's affiliates.

46. ADT has been and will continue to be damaged as a result of NorthStar's false representations, by the confusion of the market for ADT's goods and services, by the disruption of ADT's relationships with its customers, by the diversion of ADT's customers to NorthStar, by ADT's lost royalties, by ADT's loss of control of the use of its brand in the market, and by damage to ADT's goodwill and reputation as a reliable provider of security systems.

47. ADT is entitled to an injunction pursuant to 15 U.S.C. § 1116(a) barring NorthStar from further violations of 15 U.S.C. § 1125(a). Despite ADT's contempt litigation against NorthStar, NorthStar's sales agents have continued to defraud ADT's customers with false claims of affiliation in 2016 and 2017. Given its sales agents' ongoing efforts to defraud ADT's customers, NorthStar is likely to continue to engage in such practices unless it is enjoined by this Court from further violations.

48. ADT is entitled to an award of compensatory damages as well as NorthStar's profits pursuant to 15 U.S.C. § 1117(a). The court, pursuant the discretion confided to it under

this section of the Lanham Act, should consider enhancing these damages to compensate ADT fully for its losses.

49. Because NorthStar has knowingly engaged in a nationwide scheme to mislead ADT's customers, the Court should also award ADT its attorney fees and costs of suit in this action pursuant to 15 U.S.C. § 1117(a).

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against NorthStar, and award the following relief:

a. An order pursuant to 15 U.S.C. § 1116(a) permanently restraining and enjoining NorthStar and its agents, servants, independent contractors, subsidiaries, affiliates, employees, officers, attorneys, successors and assigns, from falsely stating or representing, or training sales agents to state or represent, that:

(1) their agents are visiting from "the alarm company" or "the security company" without also specifying NorthStar's name in the same sentence;

(2) ADT is going out of business or is in financial difficulty;

(3) ADT does not exist;

(4) ADT is changing or has changed its company name;

(5) NorthStar has acquired, has merged with, has been taken over by, or is part of ADT;

(6) NorthStar is acting on behalf of, or are otherwise acting with the consent or approval of ADT;

(7) NorthStar is the "sister" company of ADT;

(8) NorthStar manufactures the equipment used by ADT, or that NorthStar represents or is visiting on behalf of an alarm equipment manufacturer, including but not limited to General Electric and Honeywell;

(9) NorthStar is performing routine maintenance on the customer's ADT's equipment;

(10) any change proposed during a sales solicitation is an "update" or "upgrade" of the consumer's existing alarm system or alarm monitoring service agreement with ADT;

(11) an ADT customer's ADT security system is outdated or deficient;

(12) any enjoined party is "taking over" the monitoring of an ADT account or has purchased an ADT account from ADT;

(13) ADT is not, or has stopped, monitoring the alarm system for that person, residence, or business;

(14) ADT will no longer be able to monitor or service the alarm system for that person, residence, or business;

(15) any enjoined party is affiliated with, has the endorsement of, or is in any manner acting at the direction of any governmental or law enforcement agency without the prior approval of such governmental or law enforcement agency;

(16) statistics or other information is accurate which is known to be false or misleading, and which NorthStar has not made a reasonable effort to objectively quantify or substantiate; or

(17) any other false or misleading representation to current or former customers of ADT in the marketing or sale of an alarm system that NorthStar's sales agent knows to be false when made.

b.   Compensatory damages, in an amount to be established at trial, but believed to be no less than $10,000,000;

c.   An accounting of NorthStar's profits resulting from its deceptive practices, and payment of such profits to ADT;

d.   Attorney fees and costs incurred in the prosecution of this action, as provided by 15 U.S.C. § 1117(a); and

e.   Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT II
### (Against NorthStar)
### UNFAIR COMPETITION

50.   Plaintiffs incorporate Paragraphs 1 through 38, as if set forth fully here.

51.   ADT and NorthStar compete for a common pool of customers.  Both market alarm services to the same target market of residential customers.

52.   NorthStar has engaged in unfair and deceptive misconduct by fielding a staff of sales agents who prey on the elderly and who make false sales pitches to ADT's customers that are designed to mislead them into believing that they are acting on ADT's behalf, when in fact they represent a competitor freeriding ADT's goodwill to interfere with ADT's contracts with its customers, and to sell and install new NorthStar alarm systems.

53.   NorthStar's actions are contrary to honest practice in industrial or commercial matters.  They are prohibited by the alarm industry's own code of conduct.  They are

independently actionable, *inter alia*, as tortious interferences with ADT's contractual relationships, as violations of the Florida Deceptive & Unfair Trade Practices Act, and as violations of the Lanham Act.

54. NorthStar's actions are likely to cause confusion among consumers, and in fact already have caused confusion, as demonstrated by the declarations and transcripts referenced in Paragraph 34 above, not only in the initial stages of their agents' sales pitches, but also at the point of sale.

55. NorthStar's actions are also contrary to law because they prey upon elderly customers, who are easy targets for their agents' false sales pitches.

56. ADT has been injured as a result of NorthStar's actions.

57. NorthStar's sales agents' false sales pitches at customer doorsteps are knowing and willful. They continue today notwithstanding two years of litigation in the *Security Networks* contempt proceeding to put a stop to them. Accordingly, the Court should award punitive damages in an amount sufficient to deter NorthStar from continuing to engage in unfair competition in the market for electronic security services through their sales agents.

58. ADT is entitled to injunctive relief pursuant to common law for NorthStar's ongoing use of false sales pitches. Given the ongoing nature of NorthStar's misconduct, NorthStar is likely to continue to engage in such practices unless this Court takes appropriate measures to enjoin further violations.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against NorthStar, and award the following relief:

    a. An order permanently restraining and enjoining NorthStar and its agents, servants, independent contractors, subsidiaries, affiliates, employees, officers, attorneys,

successors and assigns, from falsely stating or representing, or training sales agents to state or represent, that:

(1) their agents are visiting from "the alarm company" or "the security company" without also specifying NorthStar's name in the same sentence;

(2) ADT is going out of business or is in financial difficulty;

(3) ADT does not exist;

(4) ADT is changing or has changed its company name;

(5) NorthStar has acquired, has merged with, has been taken over by, or is part of ADT;

(6) NorthStar is acting on behalf of, or are otherwise acting with the consent or approval of ADT;

(7) NorthStar is the "sister" company of ADT;

(8) NorthStar manufactures the equipment used by ADT, or that NorthStar represents or is visiting on behalf of an alarm equipment manufacturer, including but not limited to General Electric and Honeywell;

(9) NorthStar is performing routine maintenance on the customer's ADT's equipment;

(10) any change proposed during a sales solicitation is an "update" or "upgrade" of the consumer's existing alarm system or alarm monitoring service agreement with ADT;

(11) an ADT customer's ADT security system is outdated or deficient;

(12) any enjoined party is "taking over" the monitoring of an ADT account or has purchased an ADT account from ADT;

(13) ADT is not, or has stopped, monitoring the alarm system for that person, residence, or business;

(14) ADT will no longer be able to monitor or service the alarm system for that person, residence, or business;

(15) any enjoined party is affiliated with, has the endorsement of, or is in any manner acting at the direction of any governmental or law enforcement agency without the prior approval of such governmental or law enforcement agency;

(16) statistics or other information is accurate which is known to be false or misleading, and which NorthStar has not made a reasonable effort to objectively quantify or substantiate; or

(17) any other false or misleading representation to current or former customers of ADT in the marketing or sale of an alarm system that NorthStar's sales agent knows to be false when made.

    b.    Compensatory damages, in an amount to be established at trial, but believed to be no less than $10,000,000;

    c.    Punitive damages in a sum sufficient to deter NorthStar from engaging in further deceptive sales tactics;

    d.    Attorney fees and costs incurred in the prosecution of this action; and

    e.    Such other and further relief as the Court may deem appropriate in the circumstances.

**COUNT III**
**(Against Both Defendants)**
**DECLARATORY RELIEF**

59.    Plaintiffs incorporate Paragraphs 1 through 38, as if set forth fully here.

60. Plaintiffs bring this claim for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

61. NorthStar's purchase of Vision's assets in January 2015 effected a *de facto* merger of the two companies.

62. NorthStar was aware of the permanent injunction that was entered by this Court in *Security Networks*, No. 9:12-cv-81120, and that bound Vision when NorthStar purchased Vision's assets and merged with Vision.

63. The Eleventh Circuit, in vacating this Court's decision that NorthStar was bound by that injunction, left undecided the question of whether NorthStar was aware of the permanent injunction when it merged with Vision.

64. An actual controversy exists among the parties as to the defendants' knowledge at the time of the January 2015 merger, the scope of the Vision injunction in light of that knowledge, and the parties' respective rights and relations with respect to that injunction.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against both defendants declaring that NorthStar was aware of the Vision injunction when it purchased Vision's assets in January 2015, and that NorthStar is bound to the Vision injunction as Vision's successor by merger.

**COUNT IV**
**(Against Both Defendants)**
**BREACH OF CONTRACT**

65. Plaintiffs incorporate Paragraphs 1 through 38, as if set forth fully here.

66. ADT and Vision entered into a settlement contract on or about November 4, 2014. [*Vision* DE 75-1.]

67. Under the terms of the contract, Vision was obliged to pay ADT $200,000 upon Vision's settlement of certain third-party litigation with its insurer, Philadelphia Indemnity Insurance Company.

68. Vision settled the litigation referenced in the contract in 2017, and received sufficient funds from the insurer to pay the remaining $200,000 owed to ADT.

69. Vision did not pay ADT the remainder owed under the contract.

70. ADT performed its obligations under the contract.

71. NorthStar, as Vision's successor by *de facto* merger, is liable to ADT for the unpaid remainder of the settlement contract.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against both defendants, jointly and severally, and award the following relief:

   a. An award of the $200,000 owed under the contract;

   b. Prejudgment interest running at the statutory rate;

   c. An award of ADT's fees incurred to enforce the contract, as provided by the contract; and

   d. Such other and further relief as the Court may deem appropriate in the circumstances.

## JURY DEMAND

**Plaintiffs demand a jury trial of all issues triable to a jury.**

Dated:  March 5, 2018                               Respectfully submitted,

**McNEW P.A.**

/s/ C. Sanders McNew
_____
C. Sanders McNew
mcnew@mcnew.net
Florida Bar No. 0090561
2385 NW Executive Center Drive, Suite 100
Boca Raton, Florida  33431
Tel:  (561) 299-0257
Fax: (561) 299-3705

*Counsel for the Plaintiffs, ADT LLC*
  *-and- ADT US Holdings, Inc.*