## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ADT LLC, and ADT US HOLDINGS, INC,

      Plaintiff,

v.                            Case No. 9:18-80283-Civ-DIMITROULEAS

NORTHSTAR  ALARM  SERVICES LLC,
and VISION SECURITY, LLC

      Defendants.

_____ /

## DEFENDANT NORTHSTAR ALARM SERVICES, LLC'S ANSWER,
## AMENDED AFFIRMATIVE DEFENSES, AND AMENDED COUNTERCLAIM

Defendant NorthStar Alarm Services LLC ("NorthStar"), hereby files its Answer and Amended Affirmative Defenses to the Complaint [DE 1] and Amended Counterclaim.[1]

## SUMMARY OF CASE

1.      NorthStar admits that this purports to be an action for damages, attorney's fees and equitable relief, but denies that Plaintiffs are entitled to any relief.  NorthStar admits that it sells residential alarm systems, including via door-to-door sales, and competes with ADT in that market.  NorthStar denies the remaining allegations.

2.      The referenced court filings speak for themselves, and NorthStar denies any allegations that are not consistent with the court filings.  NorthStar denies that any of the referenced court filings have any effect or are admissible in this case.

3.      NorthStar admits that (i) ADT filed a motion for an order to show cause against NorthStar based on the argument that NorthStar was subject to the injunction entered against Vision Security, LLC ("Vision"), (ii) the Court found that NorthStar and Vision had de facto

---

[1] NorthStar has not amended the Answer from its original Answer.  *See* DE 13.

merged, and that (iii) the Eleventh Circuit held that NorthStar was not bound by that injunction. NorthStar denies the remaining allegations.

4.      NorthStar admits that this purports to be an action for legal and equitable relief, but denies that Plaintiffs are entitled to any relief.  NorthStar denies the remaining allegations.

5.      NorthStar is without sufficient knowledge or information to admit or deny the allegations in paragraph 5 and therefore denies them.

6.      NorthStar admits that ADT is a Delaware limited liability company with its principal place of business in Boca Raton, Florida, but is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 6 and therefore denies them.

7.      NorthStar admits the allegations in paragraph 7.

8.      NorthStar denies that it de facto merged with Vision, but is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 8 and therefore denies them.

## JURISDICTION AND VENUE

9.      NorthStar admits that the Court has jurisdiction.

10.     NorthStar admits that the Court has supplement jurisdiction over the state-law claims.

11.     NorthStar admits that venue is proper in this District, but denies that any actionable events have occurred in this District or elsewhere.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.     NorthStar is without sufficient knowledge or information to admit or deny the allegations in paragraph 12 and therefore denies them.

13.     NorthStar admits that ADT provides security services and equipment nationwide. The remaining allegations are a legal conclusion to which no response is required.  To the extent a response is required, NorthStar denies the allegations.

14.     NorthStar is without sufficient knowledge or information to admit or deny the allegations in paragraph 14 and therefore denies them.

15.     Denied.

16.     Admitted.

17.     NorthStar admits that it holds Florida license No. EG13000591 to sell alarm services in Florida, has a qualified agent to sell alarm systems in Florida, and has sold alarm systems door-to-door, but denies the remaining allegations.

18.     Denied.

19.     NorthStar admits that ADT is a competitor, but is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 19 and therefore denies them.

20.     Denied.

21.     NorthStar denies that court orders entered in another proceeding are admissible or relevant in this action, and therefore no response is required to those allegations.  NorthStar is without sufficient knowledge or information regarding complaints received by ADT and therefore denies those allegations.

22.     Denied.

23.     Denied.

24.     NorthStar denies that court orders entered in another proceeding are admissible or relevant in this action, and therefore no response is required to those allegations.

3

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     NorthStar is without sufficient knowledge or information to admit or deny the allegations in paragraph 29 and therefore denies them.

30.     Denied.

31.     Denied.

32.     The allegations in paragraph 32 are a legal conclusion to which no response is required.  To the extent a response is required, NorthStar denies the allegations.

33.     NorthStar denies that any ADT customers have been defrauded and that it merged with Vision.  NorthStar is without sufficient knowledge or information regarding complaints received by ADT and therefore denies those allegations.

34.     NorthStar denies that hearsay statements from another proceeding are admissible or relevant in this action, and therefore no response is required to those allegations.  To the extent a response is required, NorthStar denies the allegations.

35.     The allegations in paragraph 35 are a legal conclusion to which no response is required.  To the extent a response is required, NorthStar denies the allegations

36.     Denied.

37.     Denied.

38.     Denied.

**COUNT I**
**(Against NorthStar)**
**UNFAIR COMPETION IN VIOLATION**
**OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A)**

39.     NorthStar incorporates Paragraphs 1 through 38, as if set forth fully here.

40.     NorthStar is without sufficient knowledge or information regarding Plaintiffs' ownership and use of trademarks and therefore denies those allegations.  NorthStar denies the remaining allegations.

41.     Denied.

42.     NorthStar admits that its sales representatives do not represent ADT and that NorthStar is not affiliated with ADT.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

WHEREFORE, NorthStar denies that ADT is entitled to any relief.


**COUNT II**
**(Against NorthStar)**
**UNFAIR COMPETION**

50.     NorthStar incorporates Paragraphs 1 through 38, as if set forth fully here.

51.     Admitted that ADT and NorthStar compete, but NorthStar is without sufficient

knowledge or information as to ADT's target market of residential customers and therefore denies that allegation.

52.    Denied.

53.    Denied.

54.    Denied.

55.    Denied.

56.    Denied.

57.    Denied.

58.    Denied.

WHEREFORE, NorthStar denies that ADT is entitled to any relief.

**COUNT III**
**(Against Both Defendants)**
**<u>DECLARATORY RELIEF</u>**

59.    NorthStar incorporates Paragraphs 1 through 38, as if set forth fully here.

60.    NorthStar admits that Plaintiffs bring this claim pursuant to 28 U.S.C. § 2201 but denies that Plaintiffs are entitled to any relief.

61.    Denied.

62.    NorthStar admits that it purchased a fraction of Vision's assets on January 16, 2015, and that it was aware that an injunction had been agreed to by Vision and ADT at that time, but denies that it had actual notice of the injunction as required by Federal Rule of Civil Procedure 65, or that it merged or was otherwise in privity with Vision.

63.    Denied.

64.    Denied.

WHEREFORE, NorthStar denies that ADT is entitled to any relief.

**COUNT IV**
**(Against Both Defendants)**
**BREACH OF CONTRACT**

65.     NorthStar incorporates Paragraphs 1 through 38, as if set forth fully here.

66.     The referenced document speaks for itself, and NorthStar denies any allegation inconsistent with the document.

67.     The referenced document speaks for itself, and NorthStar denies any allegation inconsistent with the document.

68.     NorthStar is without sufficient knowledge or information regarding the allegations in paragraph 68 and therefore denies those allegations.

69.     NorthStar is without sufficient knowledge or information regarding the allegations in paragraph 69 and therefore denies those allegations.

70.     NorthStar is without sufficient knowledge or information regarding the allegations in paragraph 70 and therefore denies those allegations.

71.     Denied.

WHEREFORE, NorthStar denies that ADT is entitled to any relief.


**REQUEST FOR ATTORNEYS' FEES**

NorthStar respectfully requests that the Court award NorthStar its reasonable attorneys' fees and costs pursuant to the Lanham Act, the Settlement Contract cited in paragraph 66 (to the extent that the Court rules that NorthStar is bound by the Settlement Contract), and/or the Court's equitable powers.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense: Unclean Hands

Plaintiffs have unclean hands. Plaintiffs claim that NorthStar sales representatives make negative and untruthful statements about ADT when the sales representatives are trying to make a sale.   Although NorthStar denies that its sales representatives engage in such tactics, ADT representatives use the very tactics of which ADT complains to try to unlawfully lure NorthStar customers to ADT, as set forth more fully in NorthStar's Counterclaim.   NorthStar incorporates Paragraphs 6 through 41 of its Counterclaim, below, as if set forth fully here. *See Intra-Lock Int'l, Inc. v. Choukroun*, 2015 WL 11422285, *3 (S.D. Fla. May 4, 2015).

### Second Affirmative Defense: Failure To Mitigate

Plaintiffs failed to mitigate their alleged damages.  After ADT lost customer accounts and eventually blamed NorthStar, ADT did not make reasonable efforts to attempt to recapture those accounts and instead waited years to complain to NorthStar. *See Luxottica Group, S.p.A. v. Airport Mini Mall, LLC*, 186 F. Supp. 3d 1370, 1378-79 (N.D. Ga. 2016); *Malibu Media, LLC v. Zumbo*, 2014 WL 2742830, *3-4 (M.D. Fla. June 17, 2014).

### Third Affirmative Defense: Statute Of Limitations

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations and/or the doctrine of laches.  The applicable statute of limitations for Counts I and II is four years. Plaintiffs filed their Complaint on March 5, 2018, so to the extent they seek damages for any alleged conduct that occurred prior to March 5, 2014, those claims are time-barred.

### Fourth Affirmative Defense: Laches

Plaintiffs intentionally and unreasonably delayed in bringing this action to assert their rights.  Indeed, Plaintiffs have known of many of the alleged incidents on which they sue for

8

several years and waited years to complain to NorthStar.  Plaintiffs' unreasonable delay in bringing this action has led to surprise and prejudice, by forcing NorthStar to respond to allegations regarding events that purportedly occurred years ago and involve – in many instances – individuals no longer associated with NorthStar.  Accordingly, Plaintiffs' claims are barred by the doctrine of laches. *See* 15 U.S.C. § 1115(b)(9); *Kason Indus., Inc. v. Component Hardware Group, Inc*., 120 F.3d 1199, 1203 (11th Cir. 1997).

## Fifth Affirmative Defense: Legitimate Business Purpose

Count I and Count II are barred, in whole or in part, because NorthStar engaged only in conduct with a legitimate business purpose.  NorthStar has a legitimate business purpose in growing its business by soliciting customers and explaining to them NorthStar's pricing, products, and services and how they are different and better than those of NorthStar's competitors.  *See, e.g., Catch Curve, Inc. v. Integrated Global Concepts, Inc*., 2012 WL 12541116, *3 (N.D. Ga. July 26, 2012); *Booth v. Pasco County, Fla*., 829 F. Supp. 2d 1180, 1206 (M.D. Fla. 2011); *CI Int'l Fuels, LTDA v. Helm Bank, S.A*., 2010 WL 3368664, *2 (S.D. Fla. Aug. 23, 2010).

## Sixth Affirmative Defense: Nominative Fair Use

Plaintiffs' claims are barred, in whole or in part, by the concept of nominative fair use.  A nominative fair use occurs when another's mark was used to describe the mark owner's own goods, such as in comparative advertising, news reporting or reviews, commentary and resellers or brokers.  To the extent that NorthStar used or referred to ADT in its solicitation of customers, no greater use of the ADT mark was made than necessary, the use was accurate, did not attempt to cause confusion or capitalize on the prestige of ADT's marks, and there was no suggestion of affiliation or approval or that ADT was the source of NorthStar's goods and

9

services. For example, a NorthStar sales representative claiming that NorthStar is a security company like ADT and comparing the quality, pricing, products, services, etc. of NorthStar to those of ADT are permissible nominative fair use of ADT to reference ADT's products and services.  *See, e.g.*, *Designer Skin, LLC v. S & L Vitamins, Inc*., 2007 WL 841471, *1-2 (D. Ariz. Mar. 19, 2007).

### Seventh Affirmative Defense: Lack Of Standing

Plaintiffs have not suffered injury in fact and have not lost money or property as a result of any alleged act by NorthStar, and therefore lack standing.  Moreover, ADT US Holdings, Inc. is a holding company for ADT LLC and therefore, ADT US Holdings, Inc. has not and could not have suffered any damages as the customers at issue in this lawsuit have contracts with ADT LLC and not ADT US Holdings, Inc.  Additionally, NorthStar did not directly and proximately cause ADT LLC to lose customers accounts.  ADT LLC lost customer accounts because it provided inferior products, services, and pricing. Accordingly, neither Plaintiff has been directly and proximately damaged by NorthStar and therefore, neither has standing in this action. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549-50 (2016); *Ramnarine v. CP RE Holdco 2009-1, LLC*, 2013 WL 1788503 (S.D. Fla. Apr. 26, 2013).

### Eighth Affirmative Defense: Outside Scope Of Employment

To the extent that any sales representatives or agents engaged in unlawful conduct, or made any false or misleading statements, they were acting outside of their authority and scope of employment and contrary to the applicable standards and codes of conduct. *See, e.g.*, *Jirau v. Camden Development, Inc*., 2011 WL 2981818, *2 (M.D. Fla. July 22, 2011); *Clymer v. Caterpillar, Inc*., 2010 WL 11549901, *2 (S.D. Fla. Dec. 13, 2010);  *Stewart Title Guaranty Co. v. Arlene Raijman, P.A*., 2010 WL 11506389 (S.D. Fla. July 1, 2010).

**Ninth Affirmative Defense: Puffery/First Amendment**

NorthStar denies making any misrepresentations, but to the extent that the Court concludes that NorthStar did make misrepresentations, those misrepresentations were puffery and not violations of the Lanham Act. NorthStar's use of the term "upgrade," and other statements which ADT alleges are misrepresentations, are protected by the First Amendment. *See, e.g.*, *Gapardis Health and Beauty, Inc. v. Nouvelle Parfumerie Gandour*, 2008 WL 11333426, *2 (S.D. Fla. Mar. 7, 2008).

**Tenth Affirmative Defense: Spoliation**

ADT has lost and/or destroyed records including but not limited to correspondence and audio recordings of telephone calls of certain of the customers at issue in this lawsuit.  ADT has been preparing to seek legal redress against NorthStar for years.  Therefore, it was foreseeable that discarding records related to the customers at issue in this lawsuit would be prejudicial to NorthStar.  These records are relevant to NorthStar's defense because they would show what issues the customers had with ADT (whether it be outdated technology, poor services, or unreasonable and/or high pricing), which would in turn demonstrate that ADT lost those customers due to its own conduct.  *See McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1259 n. 4 (11th Cir. 2002); *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc*., 2012 WL 13012762, *4-5 (S.D. Fla. Mar. 6, 2012).

**Eleventh Affirmative Defense: Good Faith/ Lack Of Malice As To Punitive Damages**

NorthStar has acted at all relevant times in good faith and had reasonable grounds for believing its acts or omissions were not a violation of the Lanham Act or any other applicable statutes and regulations, such that ADT cannot recover punitive damages.  *Aidone v. Nationwide Auto Guard, LLC*, 295 F.R.D. 658, 662 (S.D. Fla. 2013); *Dougan v. Armitage Plumbing, LLC*,

11

2011 WL 5983352, *2 (M.D. Fla. Nov. 14, 2011); *Curry v. High Springs Family Practice Clinic and Diagnosis Center Inc.*, 2008 WL 5157683, *2 (N.D. Fla. Dec. 9, 2008).

### Twelfth Affirmative Defense: Release

To the extent NorthStar is bound by the settlement agreement between Vision and ADT, as ADT alleges, then the releases in the settlement agreement bar any claims based on conduct that occurred prior to the settlement agreement.

### Thirteenth Affirmative Defense: Initial Interest Confusion

ADT fails to state a claim for which relief can be granted to the extent ADT's claim of infringement is based on alleged initial interest confusion that no longer exists at time of purchase of NorthStar goods and services. NorthStar has procedures in place, such as welcome calls, to ensure that customers understand that they are contracting with NorthStar.


### AMENDED COUNTERCLAIM

Counter-Plaintiff NorthStar files this Amended Counterclaim against Counter-Defendant ADT LLC ("ADT").

### PARTIES, JURISDICTION, AND VENUE

1.      NorthStar is limited liability company organized under the laws of the State of Utah. NorthStar is registered and licensed to do business in Florida.

2.      ADT is a Delaware limited liability company with its principal place of business in Boca Raton, Florida.

3.      This Court has jurisdiction over this action pursuant to section 1331 of Title 28 because it presents a Federal question under Section 43 of the Lanham Act.

4.      This Court has supplemental jurisdiction over the state-law claim asserted in this action pursuant to Section 1367(a) of Title 28.

5.      Venue lies in this District pursuant to Section 1391(b)(1) of Title 28 because ADT resides in this District.

## GENERAL ALLEGATIONS

6.      NorthStar provides security services and equipment nationwide and is engaged in interstate commerce for the purposes of the Lanham Act.

7.      NorthStar's name and trademarks are registered with the United States Patent and Trademark Office, including NORTHSTAR, U.S. Registration No. 4,839,839; NORTHSTAR, U.S. Registration No. 5,041,648; and NORTHSTAR HOME, U.S. Registration No. 4,829,840.

8.      NorthStar's name and trademarks are well known by consumers and NorthStar's competitors.

9.      NorthStar and ADT are competitors in the security services market.

10.     ADT uses "affiliates" or "dealers" to solicit customers for ADT by going door-to-door in communities.  The affiliates act at all times as agents of ADT.

11.     ADT and its affiliates solicit customers of other alarm companies, including NorthStar, by looking for yard signs of competitors and then approaching the consumer in an effort to deceive them into switching their service to ADT.

12.     ADT and its affiliates use various tactics, false statements, and deceptive trade practices to mislead NorthStar customers to believe that ADT is associated with NorthStar, including, *inter alia*, that NorthStar is affiliated with ADT, that ADT is taking over for or has bought out NorthStar, that NorthStar has cancelled the customer's account or is no longer operating in the area, or that the customer's NorthStar system requires an "upgrade" or "update."

13

13.     NorthStar alleges the following specific examples of ADT's fraudulent conduct. The examples set forth herein represent only a portion of ADT's fraudulent conduct, which are demonstrative of a broader scheme employed by ADT:

a.  On or about September 29, 2017, a representative of ADT named Jay Perez approached the Holmes home in Detroit, Michigan.  Mr. Perez stated that he was with ADT and that ADT works with NorthStar.  That representation was false.  Ms. Holmes, who almost 90 years old, allowed Mr. Perez to enter her home because, based on Mr. Perez's false representation, she believed he worked with NorthStar. Mr. Perez claimed that NorthStar was not operating in her area anymore and that he was there because they had to replace the system every three years.  Based on these misrepresentations, Ms. Holmes signed a new agreement with ADT even though she was under contract with NorthStar.  Mr. Perez coached Ms. Holmes how to answer questions on the ADT welcome call, even though the answers were not true.  Ms. Holmes contacted ADT regarding the fraudulent sale, but ADT refused to cancel the contract.

b.  In late May 2017, a representative of ADT named Anis Rahal approached the Campbell home in Sun Valley, Nevada.  Mr. Rahal stated that NorthStar was no longer servicing the area.  That representation was false.  Based on that misrepresentation, Mr. Campbell signed a new contract with ADT even though he was under contract with NorthStar.  Mr. Rahal stated that he would take care of cancelling the NorthStar account, which was also false.

c.  On or around May 1, 2017, a representative of ADT named Nathan Roberts approached the Holland home in Burton, Michigan.   Mr. Roberts stated that

NorthStar no longer had service in Michigan.  That representation was false.  Based on that misrepresentation, Mr. Holland signed a new contract with ADT even though he was under contract with NorthStar.  Mr. Holland contacted ADT regarding the fraudulent sale, but ADT refused to cancel the contract.

d.  On or around March 1, 2017, a representative of ADT named Jared Turner approached the Ramsey home in Kansas City, Kansas.  Mr. Turner stated that ADT had bought out NorthStar.  That representation was false.  Based on that misrepresentation, Mr. Ramsey signed a new contract with ADT even though he was under contract with NorthStar.

e.  On or around May 20, 2017, a representative of ADT named Zachary Fearmeyer approached the Bass-Joiner home in Durham, North Carolina.  Mr. Fearmeyer stated that ADT took over for NorthStar.  That representation was false.  Based on that misrepresentation, Ms. Bass-Joiner signed a new contract with ADT even though she was under contract with NorthStar.  ADT's monitoring fees were higher than NorthStar, so Mr. Fearmeyer promised to pay Ms. Bass-Joiner $350, which he did not do.

f.  On or around May 10, 2017, representatives of ADT named "Nate" and "Carson" approached the Starks home in Lansing, Michigan.  Nate stated that ADT bought out NorthStar.  That representation was false.  Based on that misrepresentation, Ms. Starks signed a new contract with ADT even though she was under contract with NorthStar.  Ms. Starks contacted ADT regarding the fraudulent sale, but ADT refused to cancel the contract.

g.  On or around July 13, 2017, Ray Danningberg who was a representative of EVO Automation, an ADT dealer, approached the Moore home in Berkeley, Missouri. Mr. Danningberg requested to look at Moore's NorthStar contract, and after reviewing it, he falsely represented to Moore that Moore was no longer under contract with NorthStar.  Based on that misrepresentation, Mr. Moore signed a new contract with ADT even though he was under contract with NorthStar.

h.  In July, 2017, a representative of ADT named "McKay" approached the Day home in Bethany, Oklahoma.  McKay claimed that Ms. Day's NorthStar system operated on a landline and required an upgrade.  The ADT representative also claimed that Ms. Day's NorthStar contract was no longer valid because Ms. Day's husband had passed away.  Those statements were false.  Based on those misrepresentations, Ms. Day signed a new contract with ADT, at significantly higher price, even though she was under contract with NorthStar.

i.  In September 2017, an ADT representative named Shae Hensley approached the Chandler home in Mesa, Arizona.  Mr. Hensley claimed that Mr. Chandler's NorthStar system was not operating properly because NorthStar is not paying its bills. Mr. Hensley removed the NorthStar system, installed an ADT system, and stated that he would cancel the NorthStar account.  Those statements were false.  Based on those misrepresentations, Ms. Hensley, who is 86 years old, signed a new contract with ADT even though he was under contract with NorthStar.

j.  On or around July 19, 2017, an ADT representative contacted Kenneth Kerton of Woodbridge, Virginia.  The representative falsely claimed that ADT tried to buy out NorthStar, but the deal was not completed, but that ADT was now contacting

16

individual NorthStar customers to join ADT.  The ADT representative said that ADT would cancel his NorthStar account.  Based on those misrepresentations, Mr. Kerton signed a new contract with ADT, even though he was under contract with NorthStar. ADT did not cancel the NorthStar account.

14. While many of the false representations and sales tactics were made by affiliates who may not be directly employed by ADT, ADT's affiliates sell ADT services on ADT's behalf as ADT's agents.

15. Moreover, ADT knowingly condones, acquiesces in, encourages and profits from its affiliates' solicitation of NorthStar customers by false and misleading sales pitches.

16. For example, when Ms. Holmes contacted ADT to explain that she mistakenly signed a contract with ADT based on the fraudulent representations of Mr. Perez, ADT refused to cancel the contract, claiming Ms. Holmes failed to cancel within the three day period.  ADT also claimed that Ms. Holmes consented to the new contract during the welcome call.  Ms. Holmes, who is 90 years old, explained that the ADT agent coached her as to how to answer the questions.

17. ADT knowingly enforces contracts that were procured through fraud, thereby encouraging sales agent to use those tactics in the future.

18. As a result of these false pitches, a number of NorthStar customers have unknowingly switched their service from NorthStar to ADT.

19. ADT's and its affiliates' actions have caused damage to NorthStar, as well as damage to NorthStar's goodwill and reputation.

20. ADT and its affiliates have misappropriated NorthStar's trademark and used it in their sales pitches to establish the false appearance of an affiliation of ADT with NorthStar.  By

using NorthStar's mark without license to obtain a business advantage, ADT unjustly enriched itself at NorthStar's expense.

21.     ADT's practices violate statutory and common law prohibitions against the use of false and deceptive statements in commerce.  They also violate the security services industry's Code of Ethics and Standards of Conduct.

### Count I: Unfair Competition In Violation of the Lanham Act, 15 U.S.C. § 1125(A)(1)(A)

22.     NorthStar incorporates Paragraphs 1 through 21, as if set forth fully here.

23.     NorthStar owns its trademarks and is injured by ADT's use of those marks to confuse customers as to the affiliations of ADT with NorthStar.

24.     ADT's sales agents use false representations of affiliation with NorthStar to confuse NorthStar's customers as to the agents' true affiliation, to interest the customers in their pitches, to win the customers' trust, and to gain access to their homes.

25.     In fact, the ADT sales agents do not represent NorthStar, nor is ADT affiliated with NorthStar.

26.     ADT's sales agents make these false representations to NorthStar's customers with the intent of deceiving NorthStar's customers as to a relationship or affiliation with NorthStar that does not exist, and that has never existed.

27.     These false and misleading statements are likely to confuse consumers regarding ADT's apparent (but false) affiliation with NorthStar in the initial stages of a sale.

28.     Many of these customers sign contracts with ADT in the mistaken belief that they are contracting with NorthStar.

29.     NorthStar has been and will continue to be damaged by ADT's false representations, by the confusion of the market for NorthStar's goods and services, by the disruption of NorthStar's relationships with its customers, by the diversion of NorthStar's customers to ADT, by NorthStar's lost royalties, by NorthStar's loss of control of the use of its brand in the market, and by damage to NorthStar's goodwill and reputation as a reliable provider of security systems.

30.     NorthStar is entitled to an injunction pursuant to 15 U.S.C. § 1116(a) barring ADT from further violations of 15 U.S.C. § 1125(a).

31.     Despite the fact that ADT has sued many of its competitors regarding similar deceptive practices, ADT continues to engage in these same sales practices, and therefore ADT is likely to continue to engage in such practices unless it is enjoined by this Court from further violations.

32.     NorthStar is entitled to an award of compensatory damages, as well as ADT's profits pursuant to 15 U.S.C. § 1117(a).  The Court, pursuant to the discretion afforded by the Lanham Act, should consider enhancing these damages to compensate NorthStar fully for its losses.

33.     Because ADT has knowingly engaged in a nationwide scheme to mislead NorthStar's customers, pursuant to 15 U.S.C. § 1117(a), NorthStar requests an award of its attorneys' fees and costs incurred in this action.

WHEREFORE, NorthStar respectfully requests that the Court enter judgment in its favor and against ADT, and award the following relief:

a)     An order pursuant to 15 U.S.C. § 1116(a) permanently restraining and enjoining ADT and its agents, servants, independent contractors, subsidiaries, affiliates,

19

employees, officers, attorneys, successors and assigns, from falsely stating or representing, or training sales agents to state or represent, that:

(1)    their agents are visiting from "the alarm company" or "the security company" without also specifying ADT's name in the same sentence;

(2)    NorthStar is going out of business or is in financial difficulty;

(3)    NorthStar does not exist;

(4)    NorthStar is changing or has changed its company name;

(5)    ADT has acquired, has merged with, has been taken over by, or is part of NorthStar;

(6)    ADT is acting on behalf of, or are otherwise acting with the consent or approval of NorthStar;

(7)    ADT is the "sister" company of NorthStar;

(8)    ADT manufactures the equipment used by NorthStar, or that ADT represents or is visiting on behalf of an alarm equipment manufacturer, including but not limited to General Electric and Honeywell;

(9)    ADT is performing routine maintenance on the customer's NorthStar's equipment;

(10)    any change proposed during a sales solicitation is an "update" or "upgrade" of the consumer's existing alarm system or alarm monitoring service agreement with NorthStar;

(11)    a NorthStar customer's security system is outdated or deficient;

(12)    any enjoined party is "taking over" the monitoring of a NorthStar account or has purchased a NorthStar account;

(13)   NorthStar is not, or has stopped, monitoring the alarm system for that person, residence, or business;

(14)   NorthStar will no longer be able to monitor or service the alarm system for that person, residence, or business;

(15)   any enjoined party is affiliated with, has the endorsement of, or is in any manner acting at the direction of any governmental or law enforcement agency without the prior approval of such governmental or law enforcement agency;

(16)   statistics or other information is accurate which is known to be false or misleading, and which ADT has not made a reasonable effort to objectively quantify or substantiate; or

(17)   any other false or misleading representation to current or former customers of NorthStar in the marketing or sale of an alarm system that ADT's sales agent knows to be false when made.

b)   Compensatory damages, in an amount to be established at trial, but believed to be no less than $75,000.00;

c)   An accounting of ADT's profits resulting from its deceptive practices, and payment of such profits to NorthStar;

d)   Attorney fees and costs incurred in the prosecution of this action, as provided by 15 U.S.C. § 1117(a); and

e)   Such other and further relief as the Court may deem appropriate in the circumstances.

## Count II: Unfair Competition

34.     Plaintiffs incorporate Paragraphs 1 through 21, as if set forth fully here.

35.     ADT and NorthStar compete for a common pool of customers.  Both market alarm services to residential customers.

36.     ADT has engaged in unfair and deceptive misconduct by using sales agents who make false sales pitches to NorthStar's customers that are designed to mislead them into believing that they are acting on NorthStar's behalf, when in fact they represent a competitor freeriding on NorthStar's goodwill to interfere with NorthStar's contracts with its customers, and to sell and install new ADT alarm systems.

37.     ADT's actions are contrary to honest practice in industrial or commercial matters. They are prohibited by the alarm industry's own code of conduct.  They are independently actionable, *inter alia*, as tortious interferences with NorthStar's contractual relationships, as violations of the Florida Deceptive & Unfair Trade Practices Act, and as violations of the Lanham Act.

38.     ADT's actions are likely to cause confusion among consumers, and have already caused confusion.

39.     NorthStar has been injured as a result of ADT's actions.

40.     ADT's sales agents' false sales pitches at customers' doorsteps are knowing and willful.  They continue today despite the fact that ADT has filed numerous lawsuits against its competitors for using such tactics, claiming that such tactics are in violation of the law. Accordingly, the Court should award punitive damages in an amount sufficient to deter ADT from continuing to engage in unfair competition in the market for electronic security services through their sales agents.

41.     NorthStar is entitled to injunctive relief pursuant to common law for ADT's ongoing use of false sales pitches.  Given the ongoing nature of ADT's misconduct, ADT is likely to continue to engage in such practices unless this Court takes appropriate measures to enjoin further violations.

WHEREFORE, NorthStar respectfully requests that the Court enter judgment in its favor and against ADT, and award the following relief:

a)     An order permanently restraining and enjoining ADT and its agents, servants, independent contractors, subsidiaries, affiliates, employees, officers, attorneys, successors and assigns, from falsely stating or representing, or training sales agents to state or represent, that:

(1)   their agents are visiting from "the alarm company" or "the security company" without also specifying NorthStar's name in the same sentence;

(2)   NorthStar is going out of business or is in financial difficulty;

(3)   NorthStar does not exist;

(4)   NorthStar is changing or has changed its company name;

(5)   ADT has acquired, has merged with, has been taken over by, or is part of NorthStar;

(6)   ADT is acting on behalf of, or are otherwise acting with the consent or approval of NorthStar;

(7)   NorthStar is the "sister" company of ADT;

(8)     ADT manufactures the equipment used by NorthStar, or that ADT represents or is visiting on behalf of an alarm equipment manufacturer, including but not limited to General Electric and Honeywell;

(9)     ADT is performing routine maintenance on the customer's NorthStar's equipment;

(10)   any change proposed during a sales solicitation is an "update" or "upgrade" of the consumer's existing alarm system or alarm monitoring service agreement with NorthStar;

(11)   a NorthStar customer's security system is outdated or deficient;

(12)   any enjoined party is "taking over" the monitoring of a NorthStar account or has purchased a NorthStar account;

(13)   NorthStar is not, or has stopped, monitoring the alarm system for that person, residence, or business;

(14)   NorthStar will no longer be able to monitor or service the alarm system for that person, residence, or business;

(15)   any enjoined party is affiliated with, has the endorsement of, or is in any manner acting at the direction of any governmental or law enforcement agency without the prior approval of such governmental or law enforcement agency;

(16)   statistics or other information is accurate which is known to be false or misleading, and which ADT has not made a reasonable effort to objectively quantify or substantiate; or;

(17)   any other false or misleading representation to current or former customers of NorthStar in the marketing or sale of an alarm system that ADT's sales agent knows to be false when made.

b)      Compensatory damages, in an amount to be established at trial, but believed to be no less than $75,000.00;

c)      Punitive damages in a sum sufficient to deter ADT from engaging in further deceptive sales tactics;

d)      Attorney fees and costs incurred in the prosecution of this action; and

e)      Such other and further relief as the Court may deem appropriate in the circumstances.

Dated: May 11, 2018                          Respectfully submitted,

**SHUTTS & BOWEN LLP**
*Attorneys for NorthStar Alarm Services LLC*
525 Okeechobee Boulevard, Suite 1100
West Palm Beach, FL  33401
Telephone:  (561) 835-8500
Facsimile:   (561) 650-8530

By:       */s/ Matthew R. Chait*
           **Matthew R. Chait**
           Florida Bar No. 17657
           Email:  mchait@shutts.com
           **Eric C. Christu**
           Florida Bar No. 434647
           Email: echristu@shutts.com
           **Jonathan P. Hart**
           Florida Bar No. 55982
           Email:  jhart@shutts.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 11th day of May, 2018 I caused a true and correct of the foregoing Motion to be served by the CM/ECF service to counsel of record listed below:

*Counsel for ADT LLC*
C. Sanders McNew, Esq.
McNew P.A.
2385 NW Executive Center Drive, Suite 100
Boca Raton, FL 33431
Tel:  (561) 299-0257
Fax: (561) 299-3705
Email:  mcnew@mcnew.net

*Counsel for Vision Security, LLC*
Peter Martin Bernhardt, Esq.
Craig S. Distel
McDonald Hopkins LLC
505 South Flagler Drive
Suite 300
West Palm Beach, FL 33401
Tel:  (561) 472-2121
Fax: (561) 472-2975
Email: pbernhardt@mcdonaldhopkins.com
Email: cdistel@mcdonaldhopkins.com

*/s/ Matthew R. Chait*
Counsel

26